UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Christine Chen, Michael Nguyen, and all other similarly situated employees of SS&C,

Plaintiffs,

- against -

SS&C TECHNOLOGIES, INC.,

Defendants.

Civil No.: 22-cv-02190 (JPC) (SLC)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT STIPULATION, CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, APPROVAL OF THE PROPOSED NOTICE TO CLASS MEMBERS AND DISTRIBUTION OF SAME, AND IMPLEMENTATION OF THE SCHEDULE AND PROCEDURE TO EFFECTUATE THE CLASS ACTION SETTLEMENT**

VIRGINIA & AMBINDER, LLP
Kara Miller, Esq.
Jenny Brejt, Esq.
40 Broad Street, 7th Floor
New York, New York 10004

*Attorneys for Plaintiff and the Putative Class*

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ iv

I.    FACTUAL AND PROCEDURAL BACKGROUND...........................................1

      A.  Nature of Plaintiffs' Claims and Procedural History ....................................1

      B.  Settlement Negotiations ................................................................................2

II.   SUMMARY OF THE SETTLEMENT TERMS ...............................................3

      A.  Class Definition ............................................................................................3

      B.  Releases..........................................................................................................3

      C.  Gross Settlement Amount .............................................................................3

      D.  Notice Process................................................................................................4

      E.  Allocation Formula ........................................................................................6

      F.  Attorneys' Fees, Litigation Costs, And Service Awards ...............................8

III.  THIS COURT SHOULD CERTIFY THIS ACTION AS A CLASS PURSUANT TO
      RULE 23 FOR SETTLEMENT PURPOSES ONLY.........................................8

      A.  Rule 23 Elements Are To Be Liberally Construed ........................................9

           (1) The Class Is So Numerous That Joinder Of All Members Is Impracticable .........10

           (2) Commonality -- The Claims Of Each Member Of The Putative Class Arise From
               An Alleged Common Wrong ...............................................................10

           (3) The Named Plaintiffs' Claims Are Typical Of The Claims Of The Putative Class
               ........................................................................................................12

           (4) The Named Plaintiffs Will Fairly And Adequately Protect The Interests Of The
               Class ..................................................................................................12

           (5) Requirements of Rule 23(b)(3) Have Been Satisfied ...........................................13

IV.   CLASS ACTION SETTLEMENT PROCEDURE .........................................14

V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ...............16

    A.  The Settlement Is Non-Collusive, Fair, Reasonable, And Adequate....................17

        1.  Litigation Through Trial Would Be Complex, Costly, And Long (Grinnell Factor 1) ...................................................................................................18

        2.  The Reaction Of The Class Has Been Positive (Grinnell Factor 2) .........18

        3.  Discovery Has Advanced Far Enough To Allow The Parties To Resolve The Case Responsibly (Grinnell Factor 3) ................................................19

        4.  Plaintiffs Would Face Real Risks If The Case Proceeded (Grinnell Factors 4 And 5) ...................................................................................................19

        5.  Risks Involved In Maintaining The Class Through Trial (Grinnell Factor 6) ...............................................................................................................20

        6.  SS&C's Ability To Withstand A Greater Judgment Is Not Determinative (Grinnell Factor 7) ..................................................................................20

        7.  The Settlement Fund Is Substantial, Even In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation (Grinell Factors 8 And 9) ...............................................................................................................20

VI.    THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE...........22

VII.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.................................23

CONCLUSION...............................................................................................................................23

TABLE OF AUTHORITIES

CASES                                                                                                    PAGE


*Ansoumana v. Gristede's Operating Corp.,*
201 F.R.D. 81 (S.D.N.Y. 2001) ...........................................................................9, 12

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997)............................................................................................13

*Brzychnalski v. Unesco, Inc.,*
35 F. Supp. 2d 351 (S.D.N.Y. 1999)......................................................................9

*Cagan v. Anchor Sav. Bank FSB,*
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ...................................21

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,*
209 F.3d 43 (2d Cir. 2000) ...........................................................................17, 21

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.,*
2017 WL 3608298 (S.D.N.Y. Aug. 22, 2017)............................................................10

*Chen v. SS&C Techs. Inc.,*
Index No. 151114/2022 .........................................................................................1

*Clark v. Ecolab Inc.,*
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)..16

*deMunecas v. Bold Food,*
No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y 2010) ............................17

*Diaz v. Scores Holding Co.,*
2008 U.S. Dist. LEXIS 38248 (S.D.N.Y. May 9, 2008)..............................................9

*Dorn v. Eddington Sec., Inc.,*
No. 08 Civ. 10271, 2011 WL 382200, (S.D.N.Y. Jan. 21, 2011)................................19

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174 (W.D.N.Y. 2005)...........................................................17, 20, 21, 22

*Gortat v. Capala Bros.,*
949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013), *aff'd sub nom. Gortat v. Capala Bros., Inc.,* 568 F.
App'x 78 (2d Cir. 2014)....................................................................................10, 12

*Guzman v. VLM, Inc.,*
2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. March 2, 2008) ...........................................................9

*Han v. Sterling Nat'l Mortg. Co.,*
2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. Sept. 14, 2011)........................................................11

*Hernandez v. Immortal Rise, Inc.,*
2012 WL 5862749 (E.D.N.Y. 2013)...........................................................................................17

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
239 F.R.D. 363 (S.D.N.Y. 2007) ...........................................................................................9, 12

*In re Am. International Group Secs. Litig.,*
689 F.3d 229 (2d Cir. 2013)........................................................................................................13

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78
(2d Cir. 2001)..............................................................................................................18, 20, 21

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
2007 WL 2230177 (S.D.N.Y. July 27, 2007) .............................................................................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
574 F.3d 29 (2d Cir. 2009)..........................................................................................................12

*In re Ira Haupt & Co.,*
304 F. Supp. 917 (S.D.N.Y. 1969) .............................................................................................20

*In re Michael Milken & Assocs. Sec. Litig.,*
150 F.R.D. 57 (S.D.N.Y. 1993) ..................................................................................................22

*In re Traffic Exec. Ass'n E. R.Rs.,*
627 F.2d 631 (2d Cir. 1980).........................................................................................................16

*In re Warfarin Sodium Antitrust Litig.,*
391 F.3d 516 (3d Cir. 2004).........................................................................................................16

*Joel A. v. Giuliani,*
218 F.3d 132 (2d Cir. 2000).........................................................................................................22

*Johnson v. Brennan,*
No. 10-cv-4712 (CM), 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011).....................22

*Marisol A. ex rel. Forbes v. Giuliani,*
126 F.3d 372 (2d Cir. 1997).........................................................................................................10

*Maywalt v. Parker & Parsley Petroleum Co.,*
67 F.3d 1072 (2d Cir. 1995)............................................................................16

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972)............................................................................21

*Officers for Justice v. Civil Serv. Comm'n,*
688 F.2d 615 (9th Cir. 1982) ..........................................................................21

*Palacio v. E\*TRADE Fin. Corp.,*
No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) .................17

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985)........................................................................................14

*Poplawski v. Metroplex on the Atlantic, LLC,*
2012 U.S. Dist. LEXIS 46408 (E.D.N.Y. Apr. 2, 2012) ................................9

*Reyes v. Altamarea Grp., LLC,*
No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011)....................17

*Sykes v. Mel S. Harris and Associates LLC,*
No. 13–2742–CV, 2015 WL 525904 (2d Cir. Feb. 10, 2015) .......................10

*Velez v. Majik Cleaning Service, Inc.,,*
2005 WL 106895 (S.D.N.Y. 2005).............................................................9, 12

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011)..............................................................................10, 16

## <u>STATUTES</u>

12 NYCRR 142-2.2 .................................................................................................................1

28 U.S.C. 1715(d) ...............................................................................................................23

Article Six § 190 .................................................................................................................1

Article 19 § 650 ..................................................................................................................1

Fed. R. Civ. P. 23 ....................................................................................................1, 22, 23

Fed. R. Civ. Pro. 23(a)(1) ...................................................................................................9

Fed. R. Civ. Pro. 23(a)(2) ...................................................................................................9

Fed. R. Civ. Pro. 23(a)(3) ...................................................................................................9

Fed. R. Civ. Pro. 23(a)(4) ...................................................................................................9

Fed. R. Civ. Pro. 23(b)(3) ............................................................................................10, 13

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................22

Fed. R. Civ. P. 23(e) .........................................................................................................14

Fed. R. Civ. P. 54(d)(2) .......................................................................................................8

Rule 23 ........................................................................................................................ *passim*

Rule 23(a) ............................................................................................................................9

Rule 23(a)(1) ......................................................................................................................10

Rule 23(a)(2) ......................................................................................................................10

Rule 23(a)(3) ......................................................................................................................12

Rule 23(a)(4) ......................................................................................................................12

Rule 23(b) ............................................................................................................................9

Rule 23(b)(3) ......................................................................................................................13

Rule 23(c)(3) ......................................................................................................................22

Rule 23(c)(2)(B) ................................................................................................22

Rule 23(h) ........................................................................................................23

Newberg § 11.25 ........................................................................................16, 17

Newberg § 11.41 ...............................................................................................16

New York Labor Law (NYLL) ................................................................... *passim*

## <u>OTHER SOURCES</u>

7A C. Wright & A. Miller, Federal Practice and Procedure § 1785 .............................................10

H. Newberg & A. Conte, *1 Newberg on Class Actions* § 3.10, at 3-50 (1992) ...................... 10-11

Manual for Complex Litigation (Third) § 30.41 .........................................................................16

## INTRODUCTION

Subject to this Court's approval, Named Plaintiffs Christine Chen and Michael Nguyen (the "Named Plaintiffs") for themselves and collectively with others similarly situated ("Plaintiffs"), and Defendant SS&C Technologies, Inc. ("Defendant" or "SS&C" and, together with the Plaintiffs, the "Parties"), have settled this New York Labor Law ("NYLL") wage and hour class action. The proposed settlement satisfies all of the criteria for preliminary approval. Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Stipulation (the "Settlement"), (2) certify the settlement class for settlement purposes only pursuant to Fed. R. Civ. P. 23, (3) approve the proposed Notice and authorize distribution per the terms of the Settlement, and (4) implement the schedule and procedure proposed by the Parties for effectuating the other terms of the Settlement.[1] SS&C does not oppose this motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Nature of Plaintiffs' Claims and Procedural History

On February 5, 2022, Named Plaintiffs filed a putative class action against SS&C in the Supreme Court of New York, County of New York. (*See* ECF Docket No. 1, Ex. A, Complaint in *Chen* v. *SS&C Techs. Inc.*, Index No. 151114/2022.) Plaintiffs alleged that they and other similarly situated Senior Associates and Associates who worked for SS&C in New York were misclassified and therefore not paid overtime in violation of the NYLL Article 19 § 650 *et seq*. and Article Six § 190 *et seq*., and pursuant to 12 New York Code Rules and Regulations ("NYCRR") § 142.2.2. (*Id.*) Plaintiffs sought recovery of unpaid wages, overtime wages, liquidated damages, attorneys' fees and costs, and statutory interest. (*Id.*)

---

[1] The Settlement Stipulation is annexed as Exhibit 1 to the Declaration of Kara Miller ("Miller Declaration") in support of the motion. The Proposed Claim Form is annexed as Exhibit 2 to the Miller Declaration. Annexed to the Settlement Stipulation are the following: Ex. A Settlement Payment Allocation Schedule, Ex. B Notice of Class Action Settlement, and Ex. C Proposed Preliminary Approval Order.

On March 16, 2022, SS&C removed this action to federal court. (*See* Notice of Removal, ECF Docket No. 1.) On March 23, 2022, SS&C filed its answer, disputing the material allegations, denying liability for the claims, and asserting numerous affirmative defenses. (*See* Answer, ECF Docket No. 11.)

A First Amended Complaint was filed on April 6, 2022. (*See* First Amended Complaint, ECF Docket No. 13.) A Second Amended Complaint was filed on May 6, 2022. (*See* Second Amended Complaint, ECF Docket No. 27.) SS&C filed its Answer on May 20, 2022. (*See* Answer to Seconded Amended Complaint, ECF Docket No. 31.)

Thereafter, the Parties engaged in significant discovery, including the exchange and review of hundreds of thousands of documents, depositions of both Named Plaintiffs, and pre-class certification depositions of numerous SS&C fact and 30(b)(6) corporate-designated witnesses.

The Parties engaged in significant motion practice. This included discovery motion practice and SS&C's motion for summary judgment as to the Named Plaintiffs' claims, which has been fully briefed, but for which any decision has been stayed at the request of the Parties due to this Settlement. (*See* ECF Docket Nos. 64-75, 78, 89, 94-111.)

## B. <u>Settlement Negotiations</u>

This Settlement is the result of approximately five months of active negotiations in good faith between the Parties. The Parties reached a settlement agreement in principle on or around March 21, 2024. The Parties then continued to negotiate for an additional two months over the terms of the Settlement. As part of this process, SS&C provided weekly payroll and time records for putative class members, an extremely large data set which was reviewed and analyzed by Class Counsel. *See* Miller Declaration ¶ 4.

## II.    SUMMARY OF THE SETTLEMENT TERMS[2]

### A.    Class Definition

The proposed Settlement asks the Court to certify for settlement purposes only a Rule 23

Settlement Class for the following individuals:

> All individuals who worked or currently work for SS&C as Associates, Senior
> Associates, or equivalent titles in New York and were classified as exempt from
> overtime compensation at any time between February 5, 2016 and the present.

(*See* Miller Decl. Ex. 1 Settlement Stipulation § 4.)

Based on payroll and time records produced by SS&C, the Settlement Class consists of

756 individuals. (*See Id.* §12(i).)

### B.    Releases

Each Class Member who does not timely opt-out of the Settlement shall release SS&C

from all federal, state and local wage and hour law claims that arose or in any way related to his

or her employment with SS&C and that accrue or accrued through the Preliminary Approval Date,

including but not limited to claims that were, or could have been, brought in the litigation, and

interest, liquidated damages, attorneys' fees, and costs with respect to such claims. (*See id.* § 1

(gg).)

### C.    Gross Settlement Amount

SS&C shall pay no more than the Gross Settlement Amount to resolve the Class litigation,

consisting of five million dollars ($5,000,000.00). (*See id.* § 2.) The Gross Settlement Amount

shall consist of two funds: (i) a common fund of three million dollars ($3,000,000.00) ("Fund

One"); and (ii) a claims-made fund of two million dollars ($2,000,000.00) ("Fund Two").  (*Id.*)

For the avoidance of doubt, the following payments will be made solely from the Gross Settlement

---

[2] Capitalized terms not defined herein have the meaning ascribed to them in the Settlement
Stipulation.

Amount: all Participating Class Member Final Settlement Payments, SS&C's share of payroll taxes for Participating Class Member Final Settlement Payments, Claims Administrator Fees and Costs, Service Payments, and Attorneys' Fees and Lawsuit Costs. (*Id.*)

### D. **Notice Process**

The proposed Notice shall be published by first-class mail to each Class Member and shall inform him/her of: the Settlement; the claims he/she is releasing if a Participating Class Member; the procedure to object to the proposed Settlement, the procedure to exclude oneself from the proposed Settlement, the procedure to submit a claim form, and the process by which settlement amounts were calculated and will eventually be determined. The Notice will explain that the eventual Participating Class Member Final Settlement Payment will be a proportionate share of the Net Settlement Amount, as determined by the Claims Administrator, based on a number of factors, including: (i) that Class Member's alleged overtime damages based on payroll and time records; (ii) the SS&C business unit in which the putative Class Member worked; and (iii) whether the putative Class Member submits a valid Claim Form pursuant to the claims-made mechanism. The Notice will also explain that the employee's share of payroll taxes will be deducted from the wage portion of the settlement payment. (*See id.* § 12(a).)

No later than fourteen (14) calendar days after the Preliminary Approval Date, the Claims Administrator shall send the Notice, Claim Form, and a postage-paid pre-addressed return envelope (which the Class Member may use to return the Claim Form, submit an objection, or Request for Exclusion) to each Class Member that has been identified. Class Members will have sixty days to submit the Claim Form, request exclusion from the Settlement or object to the Settlement. Class Members may also return the Claim Form, object to the Settlement, or submit a Request for Exclusion to the Claims Administrator via facsimile or email. If a Class Member's Notice Package is returned without a forwarding address, the Claims Administrator shall attempt

4

to determine the Class Member's current address, including by calling the Class Member if a telephone number is available.  If a new address is obtained, the Claims Administrator shall promptly re-mail the Notice Package to the Class Member.  The Claims Administrator shall also perform a skip trace to locate any Class Members without a forwarding address.  Any Class Member whose Notice Package is re-mailed shall have the remainder of the sixty (60) calendar days in the Claim Period or twenty (20) calendar days after the re-mailing of the Notice Package, whichever is longer, to submit a Request for Exclusion.  No Notice Packages shall be re-mailed if it would cause the Claim Period to be extended past one hundred-sixty five (165) calendar days after the Notice Package Mailing Date, unless otherwise agreed by the Parties or ordered by the Court.  (*See id.* § 12.)

SS&C shall have the right to void and rescind the Settlement if the total value of payments to Class Members who timely submit a Request for Exclusion, or the number of Class Members who timely submit a Request for Exclusion, exceeds the thresholds agreed to by the Parties.  If either of these thresholds is met, the Claims Administrator shall notify the Parties within three (3) calendar days of having reached the applicable threshold.  If SS&C wishes to exercise its right to void and rescind this Settlement, it must do so by written communication to Class Counsel no later than ten (10) calendar days after the Claims Administrator provides such notice.  If SS&C exercises its right to void and rescind the Settlement, the Settlement will become null and void for all purposes and may not be used or introduced in further litigation or any other proceeding of any kind.  In that case, the Claims Administrator shall provide notice to Class Members that the Settlement has been terminated and that, as a result, no payments will be made to Class Members under the Settlement.  Such notice shall be mailed to the Class Members using the addresses used by the Claims Administrator in sending the Notice Package, and the cost of such notice shall be

paid from the $37,500.00 that SS&C contributed to the Qualified Settlement Fund for Claims Administrator Costs and Fees.  (*See Id.* §13(a)–(d).)

### E.  Allocation Formula

As further set forth in Exhibit C to the Settlement Stipulation, the Net Settlement Amount shall be allocated proportionately between Fund One and Fund Two (i.e., three-fifths to Fund One and two-fifths to Fund Two).

To determine the allocation, points were allocated to each Class Member according to a set of parameters: (1) For each Class Member whose date of hire was on or before February 5, 2016, the period during which overtime was calculated begins February 5, 2016 and ends when the Class Member ceased working for SS&C or on May 29, 2024, whichever is earlier. For each Class Member whose date of hire was after February 5, 2016, the period during which overtime was calculated begins on date of hire and ends when the Class Member ceased working for SS&C or on May 29, 2024, whichever is earlier; (2) Overtime damages were calculated using Class Members' actual payroll and time records, to the extent available. To the extent payroll and/or time records were unavailable for a Class Member for a particular week, the Class Member's pay rate and/or hours were assumed using a methodology agreed upon by the Parties as fair and reasonable. This included, for example, using the following averages in weeks when more specific information was unavailable: 4 overtime hours for Class Members in the Real Assets/Private Equity/Private Markets business unit, 3.4 overtime hours for Class Members in the Hedge Funds business unit, and 1.25 overtime hours for Class Members in all other business units;[3] (3) For any weeks during the covered time period where payroll records show a Class Member was classified as non-exempt and received overtime pay for hours worked over 40 in a particular week, damages

---

[3] These figures reflect the average number of overtime hours worked per week for Class Members in each business unit, based on available records for employees in those business units.

were calculated at $0 for that week; and (4) A discount percentage was assigned to account for the variations in litigation risk among the Class Members, whereby damages of Class Members in the Real Assets/Private Equity/Private Markets business units were valued at 75%, damages of Class Members in the Hedge Funds business unit were valued at 40%, and damages of Class Members in all other business units were valued at 25%.[4]

These totals were then converted from dollar amounts to points, such that the total number of points was equal to 1,000. The allocation of the Net Settlement Amount from Fund One shall be proportionate to each person's percentage share of the total points of all Participating Class Members. If any Class Members opt out, each remaining Class Member's share will be recalculated based on each person's share of the total number of points across all remaining Participating Class Members. All Participating Class Members, whether they return a Claim Form or not, shall be sent a check with their allocation of the Net Settlement Amount from Fund One. The allocation of the Net Settlement Amount from Fund Two shall be proportionate to each person's percentage share of the total points of all Participating Class Members who submit valid Claims.  In the event that the value of claims by Participating Class Members who submit valid Claims is less than the Net Settlement Amount from Fund Two, the excess shall be distributed proportionate to each person's percentage share of the total points of all Participating Class Members who submit valid Claims.  Any excess that would exceed the non-discounted value of claims by Participating Class Members who submit valid Claims shall be considered "Unclaimed Funds."  To determine each Participating Class Member's Final Settlement Payment, the amounts

---

[4] The assignment of varying litigation risks to Class Members in different business units was agreed upon by the Parties and reflects differences in roles and job responsibilities for Class Members in those respective business units based upon the varying roles of the business units within SS&C.

allocated through Fund One and Fund Two shall be combined, and the Participating Class Member's share of payroll taxes shall be deducted.

**F.  Attorneys' Fees, Litigation Costs, And Service Awards**

At the Final Approval Hearing, Class Counsel will petition the Court for an award of Attorneys' Fees and Costs not to exceed one million six hundred and fifty thousand dollars ($1,650,000), plus Claims Administrator Fees and Costs of approximately $37,500.00.  (*See id.* §§ 6(a), 7(a).)  Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiffs will move for attorneys' fees and costs along with their Motion for Final Approval of the Settlement.  Plaintiffs will apply for Service Payments for Class Representative and Named Plaintiffs Chen and Nguyen (not to exceed $50,000.00 for each Named Plaintiff and $100,000.00 total) simultaneously with their Motion for Final Approval of the Settlement.  (*See id.* § 8(a).)

SS&C shall not oppose this application for Attorneys' Fees, Claims Administrator Fees and Costs, and Service Payments, so long as the amounts sought in the application do not exceed the amounts described above.  (*See id.* §§ 7 and 8.)  The Court need not rule on the proposed attorneys' fees award, settlement administration costs or service awards now.  Plaintiffs will file separate motions asking the Court to approve them simultaneously with the Motion for Final Approval of the Settlement.

**III.    THIS COURT SHOULD CERTIFY THIS ACTION AS A CLASS PURSUANT TO RULE 23 FOR SETTLEMENT PURPOSES ONLY**

Plaintiffs seek a class for settlement purposes of all individuals who worked or currently work for SS&C as Associates, Senior Associates, or equivalent titles in New York and were classified as exempt from overtime compensation at any time between February 5, 2016 and the present. Plaintiffs respectfully request that this Court certify this action as a class action for

settlement purposes only pursuant to Rule 23 of the Federal Rules of Civil Procedure to cover Plaintiffs' NYLL claims.[5]

Courts in this circuit have routinely certified wage-and-hour classes under the New York Labor Law. *Diaz v. Scores Holding Co.,* 2008 U.S. Dist. LEXIS 38248 (S.D.N.Y. May 9, 2008); *Poplawski v. Metroplex on the Atlantic*, LLC, 2012 U.S. Dist. LEXIS 46408 (E.D.N.Y. Apr. 2, 2012); *Guzman v. VLM, Inc.,* 2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. March 2, 2008); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007); *Velez v. Majik Cleaning Service, Inc.,* 2005 WL 106895 (S.D.N.Y. 2005); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001); *Brzychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351 (S.D.N.Y. 1999).

As demonstrated below, class certification for settlement purposes only should be granted because Plaintiffs clearly meet the elements of Rule 23.

## A.  __Rule 23 Elements Are To Be Liberally Construed__

To obtain class action certification, Plaintiffs must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met.  Rule 23 provides that one or more members of a class may sue as representative parties on behalf of a class if:

1.    the class is so numerous that joinder of all members is impracticable ["numerosity"], *see* Fed. R. Civ. Pro. 23(a)(1);
2.    there are questions of law or fact common to the class ["commonality"], *see* Fed. R. Civ. Pro. 23(a)(2);
3.    the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], *see* Fed. R. Civ. Pro. 23(a)(3);
4.    the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"], *see* Fed. R. Civ. Pro. 23(a)(4); and
5.    the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include:
      (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions;
      (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

---

[5] For settlement purposes only, SS&C does not oppose certification of the Class.

(C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum;

(D) the difficulties likely to be encountered in the management of a class action ["superiority"], *see* Fed. R. Civ. Pro. 23(b)(3).

It is well established that the criteria set forth in Rule 23 are to be liberally construed. *See City of Westland Police & Fire Ret. Sys.* v. *MetLife, Inc.*, 2017 WL 3608298 at *2 (S.D.N.Y. Aug. 22, 2017) ("The Second Circuit requires a liberal, rather than restrictive, interpretation of Rule 23 of the Federal Rules of Civil Procedure.") (citing *Marisol A. ex rel. Forbes v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997)); *see also* 7A C. Wright & A. Miller, Federal Practice and Procedure § 1785.

### (1)    The Class Is So Numerous That Joinder Of All Members Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  Courts in the Second Circuit presume numerosity when the proposed class is at least 40 members. *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013), *aff'd sub nom. Gortat v. Capala Bros., Inc.*, 568 F. App'x 78 (2d Cir. 2014). A review of Defendant's payroll records reveals that there are 756 putative class members.  As a result, the putative class is sufficiently large that joinder of all members is impracticable and undesirable.  Accordingly, the numerosity requirement has been met.

### (2)    Commonality -- The Claims Of Each Member Of The Putative Class Arise From An Alleged Common Wrong

Rule 23(a)(2) requires that there are questions of law or fact common to the class. Commonality is satisfied when class members "suffered the same injury" and their claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution." *Sykes v. Mel S. Harris and Associates LLC*, No. 13–2742–CV, 2015 WL 525904, at *7 (2d Cir. Feb. 10, 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). As the requirement may be satisfied by a single common issue, it is easily met. *See, e.g.*, H. Newberg & A. Conte, *1*

10

*Newberg on Class Actions* § 3.10, at 3-50 (1992); *Han v. Sterling Nat'l Mortg. Co.,* 2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. Sept. 14, 2011). In the present action, the claims of the Named Plaintiffs and members of the putative class arise from the same alleged wrongful conduct: Defendant's purported failure to pay overtime compensation for hours worked over 40 in a week.

The questions of law and fact common to all members of the putative class that predominate over questions affecting only individual class members include:

Common Factual Questions:

1)  Whether Defendant maintained a policy and practice of paying its employees fixed rates of pay regardless of the hours they worked;

2)  Whether Defendant paid increased wages, at time and one half the regular equivalent hourly rate, for work performed over 40 hours in a week.

Common Legal Questions:

1)  Whether Defendant complied with New York Labor Law pertaining to overtime compensation for hours Plaintiffs worked over 40 each week.

The commonality of these issues is evident.  Each of these core issues involve the existence of a common nucleus of operative facts and the evidence required to prove these issues will be the same for all class members.  Indeed, the questions of law and fact concerning Defendant's liability to all class members, such as whether class members were paid overtime compensation for all hours worked over 40 each week, are not merely common questions but are *identical* questions. The harm which the Named Plaintiffs have allegedly suffered in this case is identical to the harm allegedly suffered by each and every member of the Class – namely that they were allegedly all not paid overtime wages for hours worked over 40 in a work week as required by the applicable statutes.  As such, Plaintiffs have satisfied the commonality pre-requisites of Rule 23.

**(3)**    **The Named Plaintiffs' Claims Are Typical Of The Claims Of The Putative Class**

Rule 23(a)(3) requires that the Named Plaintiffs' claims be "typical" of the proposed class. "To establish typicality, plaintiffs need only show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Gortat v. Capala Brothers, Inc.*, 2010 U.S. Dist. LEXIS 35451, at *13 (E.D.N.Y. April 9, 2010) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)).

In this case, the Named Plaintiffs' claims are typical of the claims of the members of the putative class.  Plaintiffs allege that the Named Plaintiffs and the putative class members (1) were employed by Defendant; (2) were paid a fixed rate of pay; and (3) were not paid overtime when they worked over 40 hours in a week.  Named Plaintiffs, like all putative class members, are seeking the exact same relief pursuant to a singular cause of action: allegedly unpaid overtime compensation. Accordingly, the claims of the Named Plaintiffs and all other members of the putative class arise from the same alleged conduct of Defendant and are based on the same legal theory – that Defendant purportedly breached its statutory obligations to pay overtime compensation.  Typicality is present.

**(4)**    **The Named Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class**

Rule 23(a)(4) requires that the Named Plaintiffs be in a position to adequately protect the interests of the members of the Class. The adequacy of representation prong involves a two-step inquiry: (1) whether Class Counsel is qualified; and (2) whether any conflict or antagonistic interests exists between the Named Plaintiffs and the Class Members. *Gortat v. Capala Bros.*, 257 F.R.D. 353, 363 (E.D.N.Y. 2009); *Iglesias-Mendoza*, 239 F.R.D. at 371-72; *Velez*, 2005 WL 106895, at *3; *Ansoumana*, 201 F.R.D. at 87.  Here, Named Plaintiffs are represented by counsel

who are very experienced in class actions, labor and employment law, and wage cases in particular, and have demonstrated they are qualified, experienced and generally able to conduct the proposed litigation class members in cases such as this one. Virginia & Ambinder, LLP has successfully represented classes in dozens of wage and hour cases representing tens of thousands of workers. (*See* Miller Decl. at ¶ 8.) In the present case, Named Plaintiffs wish to represent their fellow co-workers in a collective attempt to the receive wages allegedly owed to them for the many hours of work that they performed for Defendant, and share that common interest with the putative class. Therefore, there is no basis to question the adequacy of representation in this matter.

**(5)    Requirements of Rule 23(b)(3) Have Been Satisfied**

Although only one is required, both parts of Rule 23(b)(3) are met here. "When evaluating litigation classes, [the Second Circuit has] held that the predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Am. International Group Secs. Litig.,* 689 F.3d 229, 240 (2d Cir. 2013) (internal punctuation omitted). Here, questions of law or fact common to the Class predominate over questions affecting individual members for the same reasons set forth under commonality and typicality.

When considering whether a class action is superior to other available methods of adjudication, Rule 23(b)(3) requires Courts to consider "the interest of the members of the class in individually controlling the prosecution or defense of separate actions and the difficulties likely to be encountered in the management of a class action."  Fed. R. Civ. P. 23(b)(3).  Courts also look to such factors as whether "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated . . ."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). Here, the class action device is superior to any other method

for the fair and efficient adjudication of the issues before this Court. The alternative would be to require over 750 individual actions, which is neither an effective means by which to accomplish justice, nor an economical use of the Court's time and resources. Certification of the Class would also avoid the possibility of conflicting determinations and the imposition of different and perhaps incompatible standards upon Defendant. There are no difficulties likely to be encountered in the management of this action as a class action. Further, given the expense of litigation and the relatively small size of numerous individual claims, many members of the Class simply could not afford to pursue redress absent class treatment. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Accordingly, a class action is the superior and only practical method of adjudication of obtaining relief for the members of the Class.

## IV. CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of the Notice Package to all Class Members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS ("NEWBERG"), §§ 11.22, *et seq.* (4th ed. 2002). Plaintiffs request that the Court take the first step - granting preliminary approval of the Settlement, along with the attached proposed Notice Package. Plaintiffs also request that the Court authorize the second step - dissemination of the Notice Package to all Class Members.

The Parties respectfully submit the following proposed schedule for resolution of this matter for the Court's consideration and approval:

14

1. The Claim Period shall be the later of: (i) the 60-calendar day period beginning immediately after the Notice Package Mailing Date (as defined in Section 1(x)); or (ii) if a Notice Package (as defined in Section 1(w)) is returned as undeliverable, and such Notice Package is re-mailed, the Class Member shall be provided the remainder of the sixty (60) calendar days or twenty (20) calendar days after the re-mailing of such forms, whichever is longer, as described in Section 12. Both periods are to run continuously, without interruption or extension. *See* Miller Decl. Ex. 1 Settlement Stipulation § 1(e).

2. No later than fourteen (14) calendar days after the Preliminary Approval Date, the Claims Administrator, to the extent contact information is available, shall send the Notice Form, the Claim Form, and a postage-paid pre-addressed return envelope (which the Class Member may use to return the Claim Form or Request for Exclusion to the Claims Administrator by first-class mail) to each Class Member that has been identified. Class Members may also return the Claim Form or Request for Exclusion to the Administrator via facsimile or email. (*See id.* § 12.)

3. Class Members may object to the Settlement by following the instructions described in the Notice Form. To be valid, an objection must be postmarked or otherwise returned (via facsimile or email) to the Claims Administrator no later than sixty (60) calendar days after the Notice Package Mailing Date or, if the Notice Package is re-mailed, no later than twenty (20) calendar days after the re-mailing of the Notice Package or sixty (60) calendar days after the initial mailing of the Notice Package, whichever is longer. The Claims Administrator shall send to the Parties' Counsel copies of all objections no later than two (2) calendar days after their receipt. Within five (5) calendar days after the close of the Claim Period, Class Counsel shall file such objections with the Court. (*See id.* § 12(g).)

4. Class Members will have sixty (60) days after the mailing of the Notice Package Mailing Date or, if the Notice Package is re-mailed, twenty (20) calendar days after the re-mailing of the Notice Package or sixty (60) calendar days after the initial mailing of the Notice Package, whichever is longer, to submit a Claim Form or to exclude themselves from the Settlement by submitting a Request for Exclusion to the Claims Administrator by following the procedures set forth in the Notice Form. Within five (5) calendar days after the close of the Claim Period, Class Counsel shall file exclusion requests with the Court. (*See id.* § 12(e) and (g).)

5. The Parties shall request that the Court schedule a Final Approval Hearing expeditiously following the close of the Claim Period. (*See id.* § 19(c).)

6. Class Counsel shall file the Final Approval Motion no later than seven (7) days before the Final Approval Hearing. (*See id.*)

7. After the Final Approval Hearing, if the Court grants Plaintiffs' Final Approval Motion the Court will issue a Final Approval Order. If no reconsideration or rehearing is sought of the Court's Final Approval Order, and no appeal is filed, the Effective Date of the Settlement shall be thirty-five (35) days after the Final Approval Order is entered by the Court. If an appeal is taken from the Final Approval Order, the Effective Date of the Settlement shall be the date on which all such appeals have been finally adjudicated and

the Final Approval Order can no longer be appealed or reviewed.  (*See id.* § 1(n).)

## V.    **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ."  *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citations omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement.   *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (Third) § 30.41).[6] "Fairness is determined upon

_____

[6] Courts often grant preliminary settlement approval without requiring a hearing or a court

review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to object or opt-out of the Settlement. After the notice period, the Court will be able to evaluate the Settlement with the benefit of Class Members' input.

### A. The Settlement Is Non-Collusive, Fair, Reasonable, And Adequate,

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*"). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id*. at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to

---

appearance. *See, e.g.*, *Hernandez v. Immortal Rise, Inc.*, 2012 WL 5862749, at *1 (E.D.N.Y. 2013) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (same); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011) (same); *deMunecas v. Bold Food*, No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y 2010) (same).

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the settlement, and certainly in favor of preliminary approval.

### 1. Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)

This action has involved costly litigation for over two years and involves complex issues that have been, and will likely continue to be, subject to considerable motion practice. By reaching a favorable settlement on behalf of Named Plaintiffs and the Class, prior to disposition of Defendant's pending motion for summary judgment as to the Named Plaintiffs' claims, Plaintiffs have ensured recovery for the Named Plaintiffs and class and avoided lengthy delay and further costs that would be required to pursue class certification. If the Court were to deny the summary judgment motion, a fact-intensive trial would necessarily follow. A trial would be lengthy and complex and would consume tremendous time and resources for the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. The Settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first factor weighs in favor of approval. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

### 2. The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2)

Notice of the Settlement and its details has not yet been issued to the Class. The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt-out or object. At this early stage in the process, the Named Plaintiffs have

expressed approval of the Settlement.

3.  **Discovery Has Advanced Far Enough To Allow The Parties To Resolve The Case Responsibly (_Grinnell_ Factor 3)**

The discovery conducted in this action has been extensive. The Parties have both served and responded to discovery. Plaintiffs' Counsel has reviewed hundreds of thousands of pages of documents produced by SS&C, both those pertaining to the Named Plaintiffs and pertaining to putative Class Members. Depositions of the Named Plaintiffs and five managers and 30(b)(6) corporate representatives were conducted. Plaintiffs' Counsel has also communicated with Named Plaintiffs on a regular basis, as well as many putative Class Members about their claims. Plaintiffs' Counsel conducted extensive legal research on the underlying merits of the claims and Defendant's likely affirmative defenses. Defendant's motion for summary judgment has also been fully briefed, requiring extensive analysis and synthesizing of vast volumes of information and full research and analysis of legal issues. Further discovery was conducted pertaining to the Class during settlement negotiations, including review of payroll and time records. This factor strongly favors preliminary approval. _See, e.g._, _Dorn v. Eddington Sec., Inc_., No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims").

4.  **Plaintiffs Would Face Real Risks If The Case Proceeded (_Grinnell_ Factors 4 And 5)**

Although Plaintiffs' Counsel believe their case is strong, it is subject to considerable risk. There is still the chance that the Court could grant summary judgment as to the Named Plaintiffs' claims. Even if denied, Plaintiffs would still need to successfully move for certification of a class, and successfully prevail on the merits at trial.

A trial on the merits would involve risks to both parties. To the extent a class is certified under Rule 23, the Class will be comprised of present and former employees, a number of whom may not wish to participate in pre-trial discovery and trial of this action. Moreover, Plaintiffs

would have to overcome SS&C's legal and factual defenses. SS&C asserts that Class Members were appropriately classified as exempt and properly paid at all times.

While Plaintiffs' Counsel believe that they could ultimately establish both liability and damages, this would require significant factual development. Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval. *See In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969) ("[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome.").

5. **Risks Involved In Maintaining The Class Through Trial (*Grinnell* Factor 6)**

SS&C would most likely oppose Plaintiffs' application for Rule 23 class certification of the New York Labor Law claims on the grounds that Plaintiffs' individualized circumstances were so varied that class certification would prove impractical. Moreover, even if Plaintiffs were to succeed on the Rule 23 motion, SS&C would likely seek appeal of the Court's determination. There is also the risk that some business units included in the Settlement would be excluded from any class ultimately certified. Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

6. **SS&C's Ability To Withstand A Greater Judgment Is Not Determinative (*Grinnell* Factor 7)**

While it is not clear whether SS&C could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

7. **The Settlement Fund Is Substantial, Even In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation (*Grinell* Factors 8 And 9)**

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *City of Detroit,* 495 F.2d at 455 n.2.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The Parties have agreed to settle this case for a substantial sum - $5 million dollars.  The amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs prevailed on a motion to certify a class, succeeded on all claims at trial, and survived an appeal.  Moreover, the Settlement provides much more than "a fraction of the potential recovery."  Indeed, the amounts to be paid under the Settlement realistically reflect a significant portion of the purported damages alleged by the Class.  Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

The *Grinnell* factors weigh in favor of issuing preliminary approval of the Settlement.  In the event that a substantial number of objectors come forward with meritorious objections, the

21

Court can reevaluate its determination. Because the Settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" the Court should grant preliminary approval. *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).

## VI.    THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

The Proposed Notice annexed to the Settlement as Exhibit A complies with due process and Fed. R. Civ. P. 23.  Notice must provide:

> [T]he best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice satisfies each of these requirements.  The Notice also describes the terms of the Settlement, informs the Class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.  The detailed information in the proposed Notice far exceeds the minimum requirements and fully complies with the requirements of Rule 23(c)(2)(B). *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Johnson v. Brennan*, No. 10-cv-4712 (CM), 2011 U.S. Dist. LEXIS 105775, at *3 (S.D.N.Y. Sept. 16, 2011).

**VII.    A Final Approval Hearing Should be Scheduled.**

The Court should schedule a final approval hearing to determine whether final approval of the Settlement is proper.  The final approval hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including fairness, adequacy and reasonableness of the Settlement.

At that time, Class Counsel will present their final application for their fees pursuant to Rule 23(h) as well as for the proposed Service Payments to the Named Plaintiff Class Representative.  Accordingly, Plaintiffs request that the Court schedule the final approval hearing expeditiously after the end of the Claim Period, as required by 28 U.S.C. 1715(d).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order (1) granting preliminary approval of the Settlement, (2) certifying the Class for settlement purposes only pursuant to Fed. R. Civ. P. 23, (3) approving the Notice Package, including the Notice, and authorizing distribution to Class Members, and (4) implementing the schedule and procedure proposed by the Parties for effectuating the other terms of the Settlement including scheduling the final approval hearing expeditiously after the end of the Claim Period.


Dated: New York, New York
      May 30, 2024

                **VIRGINIA & AMBINDER, LLP**

                /s/ Kara Miller, Esq.
                Kara Miller, Esq.
                Jenny Brejt, Esq.
                40 Broad Street, 7th Floor
                New York, New York 10004
                Tel:    (212) 943-9080

kmiller@vandallp.com

*Counsel for Named Plaintiffs and Putative Class*