UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| Christine Chen, Michael Nguyen, and all other similarly situated employees of SS&C, <br><br>                                 Plaintiffs, <br><br> - against - <br><br> SS&C TECHNOLOGIES, INC., <br><br>                                Defendants. | Civil No.: 22-cv-02190 (JPC) (SLC) |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT**

VIRGINIA & AMBINDER, LLP
Kara Miller, Esq.
Jenny Brejt, Esq.
40 Broad Street, 7th Floor
New York, New York 10004

*Counsel for Named Plaintiffs and Settlement Class*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ...................................................................................................... iv

INTRODUCTION ............................................................................................................................1

BACKGROUND ..............................................................................................................................1

I.   Procedural History ..............................................................................................................1

II.   Summary of the Settlement Terms .....................................................................................1

III.   Distribution of Settlement Notice Package and Response From Class Members ..............6

ARGUMENT ...................................................................................................................................8

I.   The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All
     Respects ...............................................................................................................................8

     A.   The Settlement Satisfies Rule 23(e)(2)(A) and (B) and Is Procedurally Fair .............10

     B.   The Settlement Satisfies Rule 23(e)(2)(C) and Is Substantively Fair..........................10

          1.   Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor
               1) ...................................................................................................................................11

          2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) .......................11

          3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case
               Responsibly (*Grinnell* Factor 3) ............................................................................12

          4.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 And
               5) ...................................................................................................................................12

          5.   Risks Involved in Maintaining the Class Through Trial (Grinnell Factor 6) .......13

          6.   SS&C's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell*
               Factor 7 .........................................................................................................................14

          7.   The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery
               and the Attendant Risks of Litigation (*Grinnell* Factors 8 And 9) .......................13

     C.   The Remaining Rule 23(e) Factors Are Satisfied or Not Applicable ..........................15

D. The Settlement Treats All Class Members Equitably.....................................................17

II. Class Counsel's Unopposed Application For Attorneys' Fees and Costs........................17

A. Class Counsel's Request for Fees and Costs Is Reasonable Under the Percentage of the Fund Method..........................................................................................................18

B. Lodestar Cross-Check....................................................................................................21

C. Additional Expenses .....................................................................................................22

III. Class Counsel's Unopposed Request For Service Payments To Named Plaintiffs...........23

CONCLUSION..........................................................................................................................25

<u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                    <u>PAGE</u>

*Amara v. CIGNA Corp.*,
2018 U.S. Dist. LEXIS 202717 (D. Conn. Nov. 29, 2018) ...........................................................24

*Asare v. Change Group N.Y., Inc.*,
2013 U.S. Dist. LEXIS 165935 (S.D.N.Y. Nov. 15, 2013)....................................................21, 22

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...................................................................................................................17

*Beck v. Boeing Co.*,
No. 00-CV-301P (W.D. Wa. Oct. 8, 2004)................................................................................24

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010) ...........................................................24

*Cagan v. Anchor Sav. Bank FSB*,
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ..................................................14

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ..........................................................................................9, 10, 14

*Chen v. SS&C Techs. Inc.*,
Index No. 151114/2022 .................................................................................................................1

*Christine Asia Co. v. Jack Yun Ma*,
2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019)..................................................*passim*

*Clark v. Ecolab Inc.*,
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)....8

*Davis v. J.P. Morgan Chase & Co*,
827 F. Supp. 2d 172 (W.D.N.Y. Oct. 11, 2011) .......................................................................22

*Dial Corp. v. News Corp.*,
317 F.R.D. 426 (S.D.N.Y. 2016) ..............................................................................................24

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271, 2011 WL 382200, (S.D.N.Y. Jan. 21, 2011)................................................12

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 186 (W.D.N.Y. 2005) ............................................................................14

*Fisher v. SD Prot. Inc.,*
948 F.3d 593 (2d Cir. 2020) ...................................................................................19

*Goldberger v. Integrated Res., Inc.,*
209 F.3d 43 (2d Cir. 2000) ........................................................................17, 18, 21

*Guippone v. BH S&B Holdings, LLC,*
2011 WL 5148650 (S.D.N.Y. 2011) .......................................................................23

*Hicks v. Morgan Stanley,*
No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...............18, 22

*Ingram v. Coca-Cola Co.,*
200 F.R.D. 685 (N.D. Ga. 2001) ............................................................................24

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78
(2d Cir. 2001) ....................................................................................................11, 14

*In re Boesky Secs. Litig.,*
888 F. Supp. 551 (S.D.N.Y. 1995) .........................................................................22

*In re Indep. Energy Holdings PLC Sec. Litig.,*
302 F. Supp. 2d 180 (S.D.N.Y. 2003) ....................................................................22

*In re Ira Haupt & Co.,*
304 F. Supp. 917 (S.D.N.Y. 1969) .........................................................................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
330 F.R.D. 11 (E.D.N.Y. 2019) ..............................................................................10

*In re Warfarin Sodium Antitrust Litig.,*
391 F.3d 516 (3d Cir. 2004) .....................................................................................8

*In re Vitamin C Antitrust Litig.,*
2012 U.S. Dist. LEXIS 152275 (E.D.N.Y. Oct. 23, 2012) ......................................24

*Johnson v. Brennan,*
10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) .........22

*Khait v. Whirlpool Corp.,*
No. 06 Civ. 6381 (ALC), 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) .......19

*Mateer v. Peloton Interactive, Inc.,*
2024 U.S. Dist. LEXIS 44851 (S.D.N.Y. Feb. 9, 2024) ............................................................19

*Maywalt v. Parker & Parsley Petroleum Co.,*
67 F.3d 1072 (2d Cir. 1995)..........................................................................................................8

*Moses v. N.Y. Times Co,*
79 F.4th 235 (2nd Cir. 2023)........................................................................................................20

*McDaniel v. Cty. of Schenectady,*
595 F.3d 411 (2d Cir. 2010).........................................................................................................18

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972).........................................................................................................14

*Ouellette v. Cardenas (In re Sony Corp. SXRD),*
448 Fed. App'x 85, 2011 WL 4425361 (2d Cir 2011) ................................................................10

*Officers for Justice v. Civil Serv. Comm'n,*
688 F.2d 615 (9th Cir. 1982) .......................................................................................................14

*Providence v. Aeropostale, Inc.,*
No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014), aff'd sub nom.
*Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)......................................................... 17-18

*Prasker v. Asia Five Eight, LLC,*
No. 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 6, 2010) .......................21

*Roberts v. Texaco, Inc.,*
979 F. Supp. 185 (S.D.N.Y. 1997)................................................................................................24

*Velez v. Majik Cleaning Service, Inc.,*
2007 WL 7232783 (S.D.N.Y 2007)...............................................................................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
396 F.3d 96 (2d Cir. 2005)................................................................................................8, 10, 18

*Wright v. Stern,*
553 F. Supp. 2d 337 (S.D.N.Y. 2008)...........................................................................................24

**STATUTES**

Fed. R. Civ. P. 23(e)(2) ............................................................................................ *passim*

NYLL §663 .................................................................................................................21

## INTRODUCTION[1]

Named Plaintiffs Christine Chen and Michael Nguyen ("Named Plaintiffs") for themselves and collectively with others similarly situated (collectively, "Plaintiffs") submit this memorandum of law in support of their motion for final approval of the Settlement between Plaintiffs and Defendant SS&C Technologies, Inc. ("Defendant" or "SS&C" and, together with the Plaintiffs, the "Parties"), which was preliminarily approved by this Court on June 17, 2024. (*See* ECF Docket No. 121.) Specifically, Plaintiffs seek an order: (1) granting final approval of the Settlement on behalf of Named Plaintiffs and the certified settlement class, the terms of which were set forth in the Settlement Stipulation; (2) awarding Class Counsel attorneys' fees and costs; (3) awarding Service Payments to Named Plaintiffs; and (4) dismissing the litigation with prejudice as against Defendant. SS&C does not oppose this motion.

## BACKGROUND

### I.    Procedural History

On February 5, 2022, Named Plaintiffs filed a putative class action against SS&C in the Supreme Court of New York, County of New York. (*See* ECF Docket No. 1, Ex. A, Complaint in *Chen* v. *SS&C Techs. Inc.*, Index No. 151114/2022.) Plaintiffs alleged that they and other similarly situated Senior Associates and Associates who worked for SS&C in New York were misclassified and therefore not paid overtime in violation of the NYLL Article 19 § 650 *et seq.* and Article Six § 190 *et seq.*, and pursuant to 12 New York Code Rules and Regulations ("NYCRR") § 142.2.2. (*Id.*) Plaintiffs sought recovery of alleged unpaid overtime wages, liquidated damages, attorneys' fees and costs, and statutory interest. (*Id.*)

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Settlement Stipulation. (*See* ECF Docket No. 120.)

On March 16, 2022, SS&C removed this action to federal court. (*See* Notice of Removal, ECF Docket No. 1.) On March 23, 2022, SS&C filed its answer, disputing the material allegations, denying liability for the claims, and asserting numerous affirmative defenses. (*See* Answer, ECF Docket No. 11.)

A First Amended Complaint was filed on April 6, 2022. (*See* First Amended Complaint, ECF Docket No. 13.) A Second Amended Complaint was filed on May 6, 2022. (*See* Second Amended Complaint, ECF Docket No. 27.) SS&C filed its Answer on May 20, 2022. (*See* Answer to Seconded Amended Complaint, ECF Docket No. 31.)

Thereafter, the Parties engaged in significant discovery, including the exchange and review of hundreds of thousands of pages of documents, depositions of both Named Plaintiffs, and pre-class certification depositions of numerous SS&C fact and 30(b)(6) corporate-designated witnesses. (*See* ECF Docket No. 120.)

The Parties engaged in significant motion practice. This included discovery motion practice and SS&C's motion for summary judgment as to the Named Plaintiffs' claims, which has been fully briefed, but for which any decision has been stayed at the request of the Parties due to this Settlement. (*See* ECF Docket Nos. 64-75, 78, 89, 94–111.)

On May 30, 2024, Plaintiffs moved for preliminary approval of the Settlement. (*See* ECF Docket Nos. 118–20.) On June 17, 2024, this Court granted preliminary approval of the Settlement, which included ordering as follows:

> The Court grants preliminary approval of the Settlement memorialized in the Settlement Stipulation, attached as Exhibit 1 to the Miller Declaration. The Court finds on a preliminary basis that the Settlement Stipulation is fair, reasonable, and adequate, and is likely to obtain final approval following notice to the class members. Specifically, based on the Motion for Preliminary Approval, the Court finds that this case involved a bona fide dispute over wages. The Court finds that preliminary approval is warranted because the Class Representatives and Class Counsel have adequately represented the class, and the proposed Settlement was

negotiated at arms-length. The Court further finds that the relief provided is fair and reasonable, taking into account the costs, risks, and delay of trial and appeal, and was reached after the parties conducted extensive discovery. The Court also finds that the proposed method of distribution supports preliminary approval….

(ECF Docket No. 121.)

The Rule 23 Settlement Class includes the following:

> All individuals who worked or currently work for SS&C as Associates, Senior Associates, or equivalent titles in New York and were classified as exempt from overtime compensation at any time between February 5, 2016 and the present.

(See *Id.*; see also Settlement Stipulation § 4.)

## II.    Summary of the Settlement Terms

Pursuant to the Settlement, SS&C shall pay no more than the Gross Settlement Amount to resolve the Class Litigation, consisting of five million dollars ($5,000,000.00). (*See id.* § 2.) The Gross Settlement Amount shall consist of two funds: (i) a common fund of three million dollars ($3,000,000.00) ("Fund One"); and (ii) a claims-made fund of two million dollars ($2,000,000.00) ("Fund Two"). (*Id.*) For the avoidance of doubt, the following payments will be made solely from the Gross Settlement Amount: all Participating Class Member Final Settlement Payments, SS&C's share of payroll taxes for Participating Class Member Final Settlement Payments, Claims Administrator Fees and Costs, Service Payments, and Attorneys' Fees and Lawsuit Costs. (*Id.*) No part of the Gross Settlement Amount shall revert to SS&C.

As further set forth in Exhibit A to the Settlement Stipulation, as modified by the Amendment to the Settlement Stipulation (the "Amendment") dated June 27, 2024,[2] the Net Settlement Amount shall be allocated proportionately between Fund One and Fund Two (i.e.,

---

[2] Pursuant to the original allocation formula set forth in the Settlement Stipulation, some Class Members would have been ineligible to receive any monetary allocation from the Settlement. The Parties executed the Amendment to clarify the allocation formula and ensure a monetary allocation for every Participating Class member. The Amendment was submitted to the Court in the Parties' joint letter dated July 2, 2024. (ECF Docket Nos. 122, 122-1.)

three-fifths to Fund One and two-fifths to Fund Two). To determine the allocation, points were allocated to each Class Member according to a set of parameters: (1) for each Class Member whose date of hire was on or before February 5, 2016, the period during which overtime was calculated begins February 5, 2016 and ends when the Class Member ceased working for SS&C or on May 29, 2024, whichever is earlier. For each Class Member whose date of hire was after February 5, 2016, the period during which overtime was calculated begins on date of hire and ends when the Class Member ceased working for SS&C or on May 29, 2024, whichever is earlier; (2) overtime damages were calculated using Class Members' actual payroll and time records, to the extent available. To the extent payroll and/or time records were unavailable for a Class Member for a particular week, the Class Member's pay rate and/or hours were assumed using a methodology agreed upon by the Parties as fair and reasonable. This included, for example, using the following weekly averages in weeks when more specific information was unavailable: 4 overtime hours for Class Members in the Real Assets/Private Equity/Private Markets business unit, 3.4 overtime hours for Class Members in the Hedge Funds business unit, and 1.25 overtime hours for Class Members in all other business units;[3] (3) for any weeks during the covered time period where payroll records show a Class Member was classified as non-exempt and received overtime pay for hours worked over 40 in a particular week, damages were calculated at $0 for that week; and (4) a discount percentage was assigned to account for the variations in litigation risk among the Class Members, whereby damages of Class Members in the Real Assets/Private Equity/Private Markets business units were valued at 75%, damages of Class Members in the Hedge Funds business unit

---

[3] These figures reflect the average number of overtime hours worked per week for Class Members in each business unit, based on available records for employees in those business units.

were valued at 40%, and damages of Class Members in all other business units were valued at 25%.[4]

These totals were then converted from dollar amounts to points, such that the total number of points was equal to 1,000. Following the conclusion of the Claims Period, Participating Class Members' points values were recalculated to account for the removal of two class members who submitted valid requests for exclusion and the addition of four individuals whose names were not contained in the class data but who inquired about their potential inclusion in the Settlement Class and were determined to be valid Class Members (discussed further, *infra,* Part III), such that the total number of points remained equal to 1,000. The allocation of the Net Settlement Amount from Fund One shall be as follows: (1) each Participating Class Member shall be allocated $100 from the Net Settlement Amount from Fund One; and (2) the allocation of the remaining Net Settlement Amount from Fund One shall be proportionate to each person's percentage share of the total points of all Participating Class Members. All Participating Class Members, whether they returned a Claim Form or not, shall be sent a check with their allocation of the Net Settlement Amount from Fund One, consisting of the amounts in steps (1) and (2) combined. A Fund Two points value was calculated for all Participating Class Members who submitted valid Claims, such that the total number of points was equal to 1,000. The allocation of the Net Settlement Amount from Fund Two shall be as follows: (1) each Participating Class Member who submitted a valid Claim shall be allocated $100 from the Net Settlement Amount from Fund Two; and (2) the allocation of the remaining Net Settlement Amount from Fund Two shall be proportionate to each person's percentage share of the total points of all Participating Class Members who submit valid Claims.

---

[4] The assignment of varying litigation risks to Class Members in different business units was agreed upon by the Parties and reflects differences in roles and job responsibilities for Class Members in those respective business units based upon the varying roles of the business units within SS&C.

In the event that the value of claims by Participating Class Members who submit valid Claims is less than the Net Settlement Amount from Fund Two, the excess shall be distributed proportionate to each person's percentage share of the total points of all Participating Class Members who submit valid Claims. Any excess that would exceed the non-discounted value of claims by Participating Class Members who submit valid Claims shall be considered "Unclaimed Funds." To determine each Participating Class Member's Final Settlement Payment, the amounts allocated through Fund One and Fund Two shall be combined, and the Participating Class Member's share of payroll taxes shall be deducted.

Each Class Member who does not timely opt out of the Settlement shall release SS&C from all federal, state, and local wage and hour law claims that arose or in any way related to his or her employment with SS&C and that accrue or accrued through the Preliminary Approval Date, including but not limited to claims that were, or could have been, brought in the litigation, as well as interest, liquidated damages, attorneys' fees, and costs with respect to such claims. (*See id.* § 1 (gg).)

### III.    Distribution of Settlement Notice Package and Response From Class Members

Pursuant to this Court's June 17, 2024 order preliminarily approving the Settlement, Strategic Claims Services ("SCS"), the administration firm retained by the Parties, distributed the Court-approved Notice Packages by first-class mail to the 756 original Class Members on July 1, 2024. [*See* Declaration of Claim Administrator Cornelia Vieira of Strategic Claims Services ("SCS Decl.") ¶5.] A total of 74 Notice Packages were returned as undeliverable. (SCS Decl. § 7.) The claims administrator performed a skip trace on the returned notices, which revealed better addresses for 60 Class Members. (SCS Decl. § 7.) Notices were remailed to these addresses. (SCS Decl. § 7.)

After the dissemination of the Notice Packages, SCS was contacted by five individuals whose names were not contained in the class data and who inquired about their potential inclusion in the Settlement Class. (SCS Decl. § 8.) SCS e-mailed a Notice Package to these five individuals. (SCS Decl. § 8.) Class Counsel investigated whether these individuals should properly be included in the Settlement Class and also requested additional information regarding these individuals from SS&C. (Miller Decl. §2.) It was subsequently determined that four of these individuals qualified as Class Members, and they were added to the class list. (*Id.*; SCS Decl. § 8.)

The Notice Package informed Class Members that written requests for exclusion, objections to the Settlement, and the deadline to submit the optional Claim Forms must be mailed so that they were postmarked or otherwise received by SCS no later than August 30, 2024. (SCS Decl. § 9-11.) The deadline has now expired. Only two of the 756 original Class Members opted out of the Settlement Class, and no objections were received. (SCS Decl. § 9-10.) In total, 757 Participating Class Members will be sent a Settlement Check equaling the amount of their allocated share of the Settlement from Fund One.[5] Additionally, 212 non-duplicative Claim Forms were received and accepted as valid, and thus approximately 28% of the Settlement Class will also be sent a Settlement Check equaling the amount of their allocated share of the Settlement from Fund Two. (SCS Decl. § 11.) Moreover, none of the $5 million Gross Settlement Amount will revert back to SS&C.

---

[5] Following distribution of the Notice to the 756 Class Members identified in the class data, SS&C determined that four individuals had been included in the class list in error because, although they were hired by SS&C, they never actually began work for SS&C, and therefore do not fall within the Settlement Class definition. Three of these individuals did not submit Claims, and they were removed from the class list for purposes of calculating Participating Class Members' final points allocations. Additionally, as noted *supra* at 7, four individuals not originally identified from the class data were determined to be valid Class Members and were added to the Settlement Class for purposes of the final allocation.

# ARGUMENT

## I.    The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects

Under Rule 23(e), a class action settlement must be approved by a court and should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citations omitted).

In evaluating a class action settlement, Rule 23(e)(2) requires the Court to consider whether:

1.   the class representatives and class counsel have adequately represented the class;

2.   the proposal was negotiated at arm's length;

3.   the relief provided for the class is adequate, taking into account:

(a)     the costs, risks, and delay of trial and appeal;

(b)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(c)     the terms of any proposed award of attorney's fees, including timing of payment; and

(d)     any agreement required to be identified under Rule 23(e)(3); and

(e)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).

Courts also consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*"). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463. There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which are "applied in tandem" and "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836, at *37 (S.D.N.Y. Oct. 16, 2019) (quoting Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, 918 (Apr. 26, 2018)).

As set forth below, the Settlement readily satisfies the factors set forth in Rule 23(e)(2) and the factors set forth in *Grinnell*. Final approval of the settlement should therefore be granted.

## A.     The Settlement Satisfies Rule 23(e)(2)(A) and (B) and Is Procedurally Fair.

"Rule 23(e)(2)(A), which requires adequate representation, and Rule 23(e)(2)(B), which requires arm's-length negotiations, 'constitute the 'procedural' analysis' of the fairness inquiry." *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *38 (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (citation omitted)). "When the terms of a proposed settlement were reached by qualified, experienced counsel during arm's-length negotiations undertaken after meaningful discovery, a presumption of fairness may attach to a proposed settlement." *Id*. (citing *Wal-Mart Stores*, 396 F.3d at 116).

Here, Named Plaintiffs' interests are aligned with those of the class because they have all suffered the same alleged injury – not being paid overtime wages allegedly owed for work they performed over 40 hours in a workweek. In preliminarily approving this Settlement, the Court held that Plaintiffs' attorneys, Virginia & Ambinder, LLP, are adequate Class Counsel. (*See* ECF Docket No. 121.) Moreover, both Class Counsel and SS&C's Counsel are experienced in employment law and class action litigation. The Settlement was also negotiated at arm's length and reached after months of negotiations, and only after the Parties had engaged in extensive discovery and motion practice.

## B.     The Settlement Satisfies Rule 23(e)(2)(C) and Is Substantively Fair.

"Rule 23(e)(2)(C) instructs the Court to consider whether "'the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal' along with other relevant factors. Fed, R. Civ. P. 23(e)(2)(C)." *Id*. at *39–40. "Rule 23(e)(2)(C)(i) incorporates the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), and courts in this Circuit have long utilized the *Grinnell* nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate." *Id*. (citing, *e.g., Ouellette v. Cardenas (In re Sony Corp. SXRD)*, 448 Fed. App'x 85, 2011 WL 4425361, at *2 (2d Cir 2011)).

1.    **Litigation Through Trial Would Be Complex, Costly, and Long**
      **(*Grinnell* Factor 1).**

This action has involved costly litigation for over two years and involves complex issues that have been, and would likely continue to be, subject to considerable motion practice. By reaching a favorable settlement on behalf of Named Plaintiffs and the Settlement Class, prior to disposition of Defendant's pending motion for summary judgment as to the Named Plaintiffs' claims, Plaintiffs have ensured recovery for the Named Plaintiffs and Settlement Class and avoided lengthy delay and further costs that would be required to pursue further discovery and briefing on the issue of class certification, and ultimately a fact-intensive trial, in the event the Court were to deny Defendant's pending motion for summary judgment . A trial would be lengthy and complex and would consume tremendous time and resources for the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. The Settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first factor weighs in favor of final approval. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

2.    **The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).**

Here, the Court-approved Notice Package was sent to Class Members and included a clear and informative summary about the claims in this case, the settlement terms, and specific instructions on how to object or opt out or submit an optional Claim Form. Only two Class Members elected to opt out of the Settlement and no objections were received. Additionally, 222 Class Members submitted the optional Claim Form, a clear indication of their approval of the

Settlement. Accordingly, this factor also strongly supports a finding in favor of approving the Settlement.

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

The discovery conducted in this action has been extensive. The Parties have both served and responded to discovery. Plaintiffs' Counsel has reviewed hundreds of thousands of pages of documents produced by SS&C, both those pertaining to the Named Plaintiffs and pertaining to putative Class Members. Depositions were conducted of the Named Plaintiffs, five managers, and multiple 30(b)(6) corporate representatives. Plaintiffs' Counsel has also communicated with Named Plaintiffs on a regular basis, as well as with many putative Class Members about their claims. Plaintiffs' Counsel conducted extensive legal research on the underlying merits of the claims and Defendant's likely affirmative defenses. Defendant's motion for summary judgment has also been fully briefed, requiring extensive analysis and synthesis of vast volumes of information and full research and analysis of legal issues. Further discovery was conducted pertaining to the Settlement Class during settlement negotiations, including review of payroll and time records. This factor strongly favors final approval. *See, e.g.*, *Dorn v. Eddington Sec., Inc*., No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims").

### 4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 And 5).

The cash payments provided by the Settlement offer a substantial benefit over the many risks and costs Plaintiffs would face in litigating their claims to conclusion. Although Class Counsel believe their case is strong, it is subject to considerable risk. There is still the chance that the Court could grant Defendant's motion for summary judgment as to the Named Plaintiffs'

claims. Even if the pending summary judgment motion were denied, Plaintiffs would still need to successfully move for certification of a class, and successfully prevail on the merits at trial. A trial on the merits would involve risks to all parties. To the extent a class is certified under Rule 23 for litigation purposes, the class would be comprised of present and former employees, a number of whom may not wish to participate in pre-trial discovery and trial of this action. Moreover, Plaintiffs would have to overcome SS&C's legal and factual defenses. SS&C asserts that Class Members were appropriately classified as exempt and properly paid at all times.

While Class Counsel believe that they could ultimately establish both liability and damages, this would require significant factual development. Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed Settlement alleviates these uncertainties. This factor therefore also weighs in favor of final approval. *See In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969) ("[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome.").

## 5.   **Risks Involved in Maintaining the Class Through Trial(_Grinnell_ Factor 6)**

SS&C would most likely oppose Plaintiffs' application for Rule 23 class certification of the NYLL claims on the grounds that Plaintiffs' individualized circumstances were so varied that class certification would prove impractical. Moreover, even if Plaintiffs were to succeed on the Rule 23 motion for litigation purposes, SS&C would likely appeal the Court's determination. There is also the risk that some business units included in the Settlement would be excluded from

any class ultimately certified. Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of final approval.

### 6. SS&C's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

While it is not clear whether SS&C could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral and does not preclude the Court from granting final approval.

### 7. The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 And 9).

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

14

The Parties have agreed to settle this case for a substantial sum—$5 million. The amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs prevailed on a motion to certify a class, succeeded on all claims at trial, and survived an appeal. Moreover, the Settlement provides much more than "a fraction of the potential recovery." (*See* Miller Decl. ¶3.) The 222 Class Members who submitted Claim Forms and will thus receive an additional allocation from Fund Two are eligible to receive up to 100% of their actual alleged unpaid overtime damages. (*Id.*) Further, in addition to their proportionate share of the Settlement, all Participating Class Members will receive a minimum $100 payment from Fund One, and all Participating Class Members who submitted valid Claims will receive an additional $100 minimum payment from Fund Two, guaranteeing that all Participating Class Members will receive monetary compensation from the Settlement regardless of whether SS&C's data reflect that they worked any overtime hours during their employment. Moreover, none of the $5 million Gross Settlement Amount will revert back to SS&C. Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding in the litigation, the Gross Settlement Amount is more than reasonable.

### C.    The Remaining Rule 23(e) Factors Are Satisfied or Not Applicable.

Rule 23(e)(2)(C)(ii) considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, the Parties have retained the services of SCS, an experienced third-party administrator to process and distribute payments. The Settlement proceeds will be allocated according to the Allocation Formula set forth in the Settlement, as modified by the Amendment to the Settlement Stipulation. First, each Participating Class Member shall be allocated $100 from the Net Settlement Amount from Fund One. Then, the allocation of the remaining Net Settlement Amount from Fund One shall be proportionate to each person's percentage share of the total points of all Participating Class

Members and every Participating Class Member will receive a payment from Fund One. Similarly, each Participating Class Member who submit a valid Claim shall be allocated $100 from the Net Settlement Amount from Fund Two. Then, the allocation of the remaining Net Settlement Amount from Fund Two shall be proportionate to each person's percentage share of the total points of all Participating Class Members who submit valid Claims. The proposed method of distribution to the Settlement Class is therefore effective and satisfies this consideration. *See, e.g.*, *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *52.

Rule 23(e)(2)(C)(iii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." Here, Class Counsel seeks attorneys' fees in the amount of $1,635,122.82, plus reimbursement of $14,877.18 in costs and expenses incurred, for a total amount of $1,650,000. This represents 32% of the $5,000,000 Gross Settlement Amount and a 2.27 multiplier over Class Counsel's current lodestar amount of $719,974.25. Moreover, none of the $5,000,000 Gross Settlement Amount will revert back to SS&C. More information about Class Counsel's application for attorneys' fees and costs is set forth below.

Rule 23(e)(2)(C)(iv) considers "any agreement required to be identified under Rule 23(e)(3)." Here, the Parties contemporaneously agreed to a confidential Supplemental Agreement, which is referenced in the Settlement Stipulation. As described in the Settlement Stipulation, and as is customary in class action settlements, the purpose of the confidential Supplemental Agreement is to provide the Defendant with the option to withdraw from and terminate the Settlement in its entirety and to render the Settlement Stipulation null and void if timely requests for exclusion from the class are submitted by eligible class members that meet the conditions set forth in the Supplemental Agreement. The conditions set forth in the Supplemental Agreement were not met here, and accordingly, this agreement has no bearing on the fairness of the Settlement.

**D.    The Settlement Treats All Class Members Equitably.**

Here, the Settlement both accounts for the differences between Class Members and treats them equally accounting for those differences. As set forth above, Class Members' allocations of the Net Settlement Amount from Fund One and Fund Two were based on each Class Member's actual payroll and time records, to the extent available, and a methodology agreed upon by the Parties as fair and reasonable to the extent actual records were not available, including for example, averages from existing data. *See Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *54.

*** 

As such, the Settlement readily satisfies the factors set forth in Rule 23(e)(2) and the factors set forth in *Grinnell*. Final approval of the Settlement should therefore be granted.

**II.    Class Counsel's Unopposed Application For Attorneys' Fees and Costs**

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally toward the costs associated with litigation pursued on their behalf. *See Goldberger*, 209 F.3d at 47. Courts have recognized that in addition to providing just compensation, awards of fair attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See City of Providence v. Aeropostale, Inc.,* No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *10-11 (S.D.N.Y. May 9, 2014), aff'd sub nom. *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

17

Fairly compensating Class Counsel for the risks they took in bringing this action is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

"The Second Circuit permits courts to award attorneys' fees in common fund cases under either of two methods, the "percentage of the fund" method or the "lodestar" method." *Christine Asia Co*. v. *Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836, at *60 (S.D.N.Y. Oct. 16, 2019) (*quoting McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). "While courts have the discretion to choose whichever method is appropriate to the circumstances of a case, the "trend in this Circuit is toward the percentage method," with the lodestar serving only as a "cross-check" on the resulting fee." *Id*. (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121, 123 (2d Cir. 2005)). Class Counsel's request for fees and costs is fair and reasonable under either method.

### A.    Class Counsel's Request for Fees and Costs Is Reasonable Under the Percentage of the Fund Method

Class Counsel submit this unopposed application for approval of attorneys' fees in the amount of $1,635,122.82, which represents 32% of the $5,000,000 Gross Settlement Amount. Factors considered for assessing the reasonableness of an award under the percentage of a fund method include: (1) the amount of the requested fee in relation to the settlement; (2) the risks of the litigation; (3) the magnitude and complexities of the litigation; (4) the quality of representation; (5) public policy considerations; and (6) the time and labor expended by counsel. *Goldberger*, 209 F.3d at 50. All factors weigh in favor of approval.

As to the first factor, 32% of the Gross Settlement Amount is reasonable and in line with percentages awarded in much less complicated employment cases. *See Mateer v. Peloton*

*Interactive, Inc.*, 2024 U.S. Dist. LEXIS 44851, *3 (S.D.N.Y. Feb. 9, 2024) (granting fees of 33% of $2,500,000 gross settlement fund as reasonable and stating that "empirical evidence indicates that the median percentage of the settlement amount awarded as attorneys' fees in FLSA class actions is approximately 33%."); *see also Fisher v. SD Prot. Inc*., 948 F.3d 593, 603 (2d Cir. 2020) (noting fees of 33% in simple FLSA cases was reasonable); ; *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 U.S. Dist. LEXIS 4067 at *9 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund in wage and hour case).

The second factor, the risk of litigation, also strongly supports Class Counsel's fee application. The fully briefed summary judgment motions demonstrate how fiercely contested the claims are in this case. As set forth previously, even if the pending summary judgment motion were denied, Plaintiffs would still need to successfully move for certification of a class, and successfully prevail on the merits at trial. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. (Miller Decl. § 6.)  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Indeed, Class Counsel expended over 1,857.75 hours in this case. (Miller Decl. § 7.)  Due to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Class Counsel stood to gain nothing in the event the case was unsuccessful.

The third and fourth factors, the magnitude and complexities of the litigation and the quality of representation, go hand in hand and strongly support Class Counsel's application. Virginia & Ambinder, LLP is a specialized labor and employment law firm that has been

exclusively representing workers for decades and routinely handles complex class actions and handled this complex class action in kind. (Miller Decl. §§4-5.) Misclassification cases which depend on the potential applicability of certain NYLL exemptions are fact intensive, which makes these cases inherently complex, especially when brought on behalf of a class. The complexity was multiplied further by SS&C's fund administration business. Through countless discussions with Named Plaintiffs and then putative class members[6], review of hundreds of thousands of documents, including many excel spreadsheets with seemingly infinite lines of data, taking pre-class certification depositions of five SS&C managers and multiple 30(b)(6) corporate representatives, and defending the Named Plaintiffs' depositions, Class Counsel was able to break up SS&C's fund administration work into each step in the process, and thereby drill down on primary job duties performed by Named Plaintiffs and other Associates and Senior Associates in New York. (Miller Decl. §8.) As set forth above, this Settlement provides a significant amount of overtime wages to Class Members, including up to 100% of actual alleged unpaid overtime damages to the 222 Participating Class Members who submitted valid Claim Forms, and includes Class Members in business units within SS&C that had significantly greater litigation risk and for whom this Settlement was likely their only chance of recovery. Class Counsel's skill and extensive investment of time and resources into this case were directly related to the outstanding outcome achieved in this Settlement. See *Moses v. N.Y. Times Co*, 79 F.4th 235, 244 (2nd Cir. 2023) (quoting Fed. R. Civ. P. 23(e)(3) advisory committee's note to 2018 amendment) ("[T]he relief actually delivered to the class can be a significant factor in determining the appropriate fee award.") (*See generally* Miller Decl.)

---

[6] Class Counsel was contacted by putative class members during the course of litigation, prior to this Settlement.

The fifth factor, public policy considerations, also supports Class Counsel's application. The NYLL is a remedial statute, designed to protect the wages of workers, and it specifically provides for an award of reasonable attorney's fees to be paid by the Defendants. *See* NYLL § 663; *see also Asare v. Change Group N.Y., Inc.,* 2013 U.S. Dist. LEXIS 165935, *57-58 (S.D.N.Y. Nov. 15, 2013) ("Fair compensation for attorneys who prosecute those rights [under the NYLL] by taking on such litigation furthers the remedial purpose of those statutes"); *Prasker v. Asia Five Eight, LLC*, No. 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.").

Finally, the sixth factor, the time and labor expended by Class Counsel, also weighs heavily in favor of the requested fee award. Class Counsel has devoted approximately three years and over 1,857.75 hours of attorney, paralegal, and staff member time on this matter to date for which they have received no compensation. (*See* Miller Decl. §§6-7.)

In light of the above, all the Goldberger factors are met and support granting Class Counsel's request for attorneys' fees.

### B. Lodestar Cross-Check

Applying a lodestar cross-check to Class Counsel's award request demonstrates that it is reasonable. "Where the [lodestar method] is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the District Court. Instead the reasonableness of the claimed lodestar can be tested by the Court's familiarity with the case." *Asare*, 2013 U.S. Dist. LEXIS 165935 at *48-49 (quoting *Goldberger*, 209 F.3d at 50.) "The lodestar is determined by multiplying the hours reasonably expended by a reasonable hourly rate, followed by a multiplier based on factors such as the quality of representation and results achieved." *Id*. (citing *Hicks v.*

21

*Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at*9 (S.D.N.Y. Oct. 24, 2005); *In re Boesky Secs. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995) (additional string cite omitted).

Here, Class Counsel's lodestar totals $719,974.25. (*See* Miller Decl. §7.) A multiplier of 2.27 reflects the risks assumed by Class Counsel in taking this case on a contingency basis and is entirely reasonable, being on the lower end of multipliers within the Second Circuit, where 2 to 6 times the lodestar are typical. *See e.g. Asare*, 2013 U.S. Dist. LEXIS 165935 at *51-52 (noting that applying only the actual lodestar "would penalize Class Counsel for reaching early settlement and achieving a quick and manifestly favorable result.") (citing *Johnson v. Brennan*, 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775 at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar"); *Davis v. J.P. Morgan Chase & Co,* 827 F. Supp. 2d 172, 185 (W.D.N.Y. Oct. 11, 2011) (multiplier of 5.3 used in FLSA and NYLL case)) (additional citations omitted). Class Counsel's lodestar also does not account for the work that must be performed going forward in the event Settlement is approved. This includes, for example, continuing to respond to communications from Participating Class Members and address any concerns related to effectuating the Settlement.

### C.    Additional Expenses

Class Counsel also seeks reimbursement of $14,877.18 in costs and expenses that were incidental and necessary to the representation of Plaintiffs and the Class. *See* e.g. *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). These include costs such as court and process server fees, deposition transcripts, and legal research. (See Miller Decl. §7.)

****

For the reasons set forth herein, as well as in the Miller Declaration and contemporaneous accounting of legal fees and costs attached thereto, Class Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

### III.    <u>Class Counsel's Unopposed Request For Service Payments To Named Plaintiffs</u>

Class Counsel also seek approval of Service Payments for Named Plaintiff Chen and Nguyen in the amount of fifty thousand dollars ($50,000.00) each. As set forth in the Miller Declaration, the Named Plaintiffs undertook enormous risks lending their names to this action, dedicated approximately three years advancing their claims on behalf of themselves and the Class, took time off from work for lengthy depositions, and experienced personal risk to their employment in the process. (*See* Miller Decl. §9.) Moreover, many Participating Class Members' calculated overtime damages for this Settlement totaled tens of thousands of dollars. The requested Service Payments are thus comparable, if not less than, potential benefits Class Members are eligible to receive through this Settlement. The Service Payments requested are reasonable and fair under the circumstances. *See Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, *7 (S.D.N.Y 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *Guippone v. BH S&B Holdings, LLC*, 2011 WL 5148650, at *7 (S.D.N.Y. 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members.")

23

The Service Payments to Named Plaintiff Chen and Nguyen in an amount of $50,000 each are well within the range approved in the Second Circuit. *See e.g. Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (finding $50,000 service payment reasonable in light of burdens imposed by participating as a named party in the litigation) (citing *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving service payments to two named plaintiffs of $ 300,000 each in two-year lawsuit); *Beck v. Boeing Co.,* No. 00-CV-301P, at 4 (W.D. Wa. Oct. 8, 2004) (order approving award of $ 100,000 each to twelve named plaintiffs in four-year lawsuit); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 188-89 (S.D.N.Y. 1997) (approving awards of $ 85,000 and $ 50,000 to named plaintiffs in three-year lawsuit)); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 203-04 (S.D.N.Y. 1997) (approving incentive payment of $85,000 for plaintiff who was "a driving force in the initiation of this litigation and in its prosecution to a successful conclusion, a result that mightily benefited the Class" and who "faced personal risk" for doing so); *Dial Corp. v. News Corp*., 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (approving incentive payment of $85,000); *Amara v. CIGNA Corp*., 2018 U.S. Dist. LEXIS 202717, *10-11 (D. Conn. Nov. 29, 2018) (awarding three class representatives incentive payments of $50,000) (citing *In re Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 152275, at *11 (E.D.N.Y. Oct. 23, 2012) (approving $50,000 incentive payment for each of two class representatives); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 U.S. Dist. LEXIS 79679, at *7 (S.D.N.Y. Aug. 6, 2010) ($75,000 awards to five named plaintiffs and $25,000 to $60,000 awards to four class member witnesses)).

Additionally, the Notice Package to each Class Member advised them that Service Payments of $50,000 each to Named Plaintiffs Chen and Nguyen would be allocated from the Gross Settlement Amount. The fact that not one Participating Class Member has objected to the

Service Award strongly supports a finding that the request is fair, reasonable, and should be approved by the Court.

## **CONCLUSION**

Plaintiffs therefore respectfully request that the Court issue an order: (1) granting final approval of the Settlement on behalf of Named Plaintiffs and the certified settlement class; (2) awarding Class Counsel attorneys' fees and costs; (3) awarding Service Payments to Named Plaintiffs; and (4) dismissing the litigation with prejudice as against Defendant.

Dated: New York, New York
      October 24, 2024

          Respectfully submitted,

          **VIRGINIA & AMBINDER, LLP**

          <u>/s/ Kara Miller, Esq.</u>
          Kara Miller, Esq.
          Jenny Brejt, Esq.
          40 Broad Street, 7th Floor
          New York, New York 10004
          Tel: (212) 943-9080
          kmiller@vandallp.com

          *Counsel for Named Plaintiffs and Settlement Class*